Donald M. Falk (Cal. Bar No. 150256)
SCHAERR | JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 562-4942
dfalk@schaerr-jaffe.com

H. Christopher Bartolomucci (D.C. Bar No. 453423)*
Brian J. Field (D.C. Bar No. 985577)*
Aaron Gordon (Texas Bar No. 24129117)*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com
agordon@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ABATTI; THE MICHAEL AND KERRI ABATTI FAMILY TRUST; MIKE ABATTI FARMS, LLC; JAMES ABATTI; THE ABATTI FAMILY TRUST DATED JULY 21, 2005; MADJAC FARMS, INC.; MARGARET L. ABATTI; THE ABATTI FAMILY TRUST DATED AUGUST 7, 1991; ROBERT PRESLEY; DANA PRESLEY; SMOKE TREE RANCHES, LLC; ALEX ABATTI, JR.; LA VALLE SABBIA, INC.; THE C. ALEX ABATTI, JR. 1996 FAMILY TRUST UDT DATED FEBRUARY 2, 1996; RUSSELL BROS. RANCHES, INC.; NOWLIN FAMILY | Case No.: 22-cv-1323-MMA-KSC<br>The Honorable Michael M. Anello<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date: TBD<br>Time: TBD<br>Courtroom: 3C<br><br>Date Action Filed: September 2, 2022 |

LLC; VICTOR THOMSON TRUST; THOMSON INFINITY X I & QUASAR Z Q JT; OSBORN FAMILY TRUST & STACEY L. LOVE TRUST; STEVE G DAHM TRUST; HAROLD E. RICHTER REVOCABLE TRUST; RICHTER 1991 FAMILY TRUST EXEMPTION TRUST; ROY F. RICHTER FAMILY REVOCABLE LIVING TRUST; MARY A. JACKSON; MARY A. AND CHRISMAN B. JACKSON TRUST DATED FEBRUARY 22, 1993; and THE TODD AND JENNIFER MITOSINKA FAMILY TRUST,

      *Plaintiffs*,

v.

IMPERIAL IRRIGATION DISTRICT; ALEX CARDENAS; JAVIER GONZALEZ; J.B. HAMBY; KARIN EUGENIO; and GINA DOCKSTADER, in their official capacities as members of the Board of Directors,

      *Defendants*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

I. PLAINTIFFS HAVE PROPERTY INTERESTS IN THE USE OF PROJECT WATER. ................ 1

    A.    State and Federal Law Establish Plaintiffs' Property Interests. ..................... 1

    B.    The District Is Estopped From Denying That Plaintiffs Have a Property Interest in Beneficial Use of Project Water. ..................................... 9

II. THE EDP EFFECTS AN UNCONSTITUTIONAL TAKING OF PLAINTIFFS' PROPERTY. ......................................................................................... 13

    A.    Plaintiffs Have Stated a Takings Claim. ..................................... 13

    B.    Plaintiffs' Takings Claim Is Ripe. ..................................... 14

III. Plaintiffs Have Alleged a Violation of Their Due Process Rights. ......................... 16

IV. PLAINTIFFS HAVE ALLEGED A VIOLATION OF THE EQUAL PROTECTION CLAUSE. ......................................................................................... 19

V. PLAINTIFFS' SUIT DOES NOT REQUIRE A PRIVATE RIGHT OF ACTION UNDER THE RECLAMATION ACT OR PROJECT ACT. ..................................... 20

VI. PLAINTIFFS' CLAIMS ARE NOT BARRED BY RES JUDICATA. ..................... 22

**Cases**

*Abatti v. Imperial Irr. Dist.*, 52 Cal. App. 5th 236 (2020)..................................*passim*

*Aguilar v. Lerner*, 32 Cal. 4th 974 (2004) ........................................................11

*Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150 (2005) .....................23, 24

*Arizona v. California*, 376 U.S. 340 (1964)...........................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................15

*Barry v. Barchi*, 443 U.S. 55 (1979)....................................................................17

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012)........................9, 11

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ......................................................2, 21

*Bell v. Burson*, 402 U.S. 535 (1971) ...................................................................17

*Bleeck v. State Bd. of Optometry*, 18 Cal. App. 3d 415 (1971) ..........................23, 24, 25

*Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.*,
     29 Cal. App. 4th 1828 (1994) ......................................................................22

*Bryant v. Yellen*, 447 U.S. 352 (1980) ..........................................................*passim*

*California v. United States*, 438 U.S. 645 (1978) ...................................................4, 5

*Campbell v. Burt*, 141 F.3d 927 (9th Cir. 1998)......................................................21

*Carnes v. Parker*, 922 F.2d 1506 (10th Cir. 1991) ....................................................2

*Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276 (Fed. Cir. 2008) ...................14

*Chern v. Bank of Am.*, 15 Cal. 3d 866 (1976)........................................................23

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)....................................18, 19

*Dugan v. Rank*, 372 U.S. 609 (1963).................................................................3, 14

*Frommhagen v. Bd. of Supervisors*, 197 Cal. App. 3d 1292 (1987) ........................23, 24

*Guatay Christian Fellowship v. Cnty. of San Diego*,
     670 F.3d 957 (9th Cir. 2011)........................................................................21

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ..........................9

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966) ..........................................20

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)....................................................12

*Hulsey v. Koehler*, 218 Cal. App. 3d 1150 (1990)..........................................22

*Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012) ..........................1

*Ickes v. Fox*, 300 U.S. 82 (1937)..........................................2, 8

*Int'l Paper Co. v. United States*, 282 U.S. 399 (1931) ..........................14

*Inzana v. Turlock Irr. Dist. Bd. of Dirs.*, 35 Cal. App. 5th 429 (2019) ..........................13

*Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*,
    36 Cal. App. 5th 766 (2019) ..........................23

*Kamilche Co. v. United States*, 53 F.3d 1059 (9th Cir. 1995) ..........................13

*Kittitas Reclamation Dist. v. Sunnyside Valley Irr. Dist.*,
    626 F.2d 95 (9th Cir. 1980)..........................3

*Klamath Irr. Dist. v. United States*, 227 P.3d 1145 (Or. 2010) ..........................2, 6

*Klamath Irr. Dist. v. United States*, 67 Fed. Cl. 504 (2005)..........................4, 5

*Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)..........................15

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ..........................15

*Kopp v. Fair Pol. Pracs. Comm'n*, 11 Cal. 4th 607 (1995)..........................25

*Lawrence v. Southard*, 73 P.2d 722 (Wash. 1937) ..........................6

*Long v. Salt River Valley Water Users' Ass'n*,
    820 F.2d 284 (9th Cir. 1987)..........................20, 21

*Louis Stores, Inc. v. Dep't of Alcoholic Beverage Control*,
    57 Cal. 2d 749 (1962) ..........................23, 24

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) ..........................16

*Lucido v. Super. Ct.*, 51 Cal. 3d 335 (1990) ..........................24

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................2, 17

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ..........................17, 21

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ..........................21

*Montana v. United States*, 440 U.S. 147 (1979) ..........................12

*Munoz v. Imperial Cnty.*, 667 F.2d 811 (9th Cir. 1982) ..........................25

*Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888 (2002)..........................22

*Nebraska v. Wyoming*, 325 U.S. 589 (1945) ..........................2, 8

*Nevada v. United States*, 463 U.S. 110 (1983) ............................................................2, 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..................................................9, 10, 11, 12

*Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226 (2021) ...........................14, 15

*Peabody v. United States*, 231 U.S. 530 (1913) ...................................................................14

*Pennell v. City of San Jose*, 485 U.S. 1 (1988) ..................................................................15

*People v. Barragan*, 32 Cal. 4th 236 (2004) .......................................................................25

*Plan. & Conservation League v. Castaic Lake Water Agency*,
    180 Cal. App. 4th 210 (2009) ....................................................................................22, 24

*Rank v. Krug*, 90 F. Supp. 773 (S.D. Cal. 1950) ..........................................................2, 4, 6

*Rissetto v. Plumbers & Steamfitters Loc. 343*,
    94 F.3d 597 (9th Cir. 1996) ............................................................................................11

*S. Pac. Co. v. Van Hoosear*, 72 F.2d 903 (9th Cir. 1934) ..................................................23

*Silva v. Reclamation Dist. No. 1001*, 41 Cal. App. 326 (1919) ....................................23, 24

*Strawberry Water Users Ass'n v. United States*,
    576 F.3d 1133 (10th Cir. 2009) .........................................................................................5

*Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725 (1997) ...............................................14

*Taylor v. Sturgell*, 553 U.S. 880 (2008) .......................................................................12, 25

*The Inland Oversight Comm. v. City of San Bernardino*,
    27 Cal. App. 5th 771 (2018) ............................................................................................22

*Truckee-Carson Irr. Dist. v. Sec'y of Dep't of Interior*,
    742 F.2d 527 (9th Cir. 1984) .............................................................................................8

*United States v. Alpine Land & Reservoir Co.*,
    697 F.2d 851 (9th Cir. 1983) ...................................................................................6, 16, 17

*United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217 (9th Cir. 1989) .................5

*United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207 (9th Cir. 1989) ...............5, 7

*United States v. Clifford Matley Fam. Tr.*, 354 F.3d 1154 (9th Cir. 2004) ..................6, 16

*United States v. Moser*, 266 U.S. 236 (1924) ....................................................................12

*United States v. Pioneer Irr. Dist.*, 157 P.3d 600 (Idaho 2007) .........................................8

*Van Der Valk v. Shell Oil Co.*, 233 F. App'x 752 (9th Cir. 2007) ....................................23

*Vandevere v. Lloyd*, 644 F.3d 957 (9th Cir. 2011) ............................................................21

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)..............................................20

*Ward v. Downtown Dev. Auth.*, 786 F.2d 1526 (11th Cir. 1986) ......................................21

*Yates v. Kuhl*, 130 Cal. App. 2d 536 (1955) .........................................22, 24, 25

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ..............................................20

**Constitutional Provisions**

U.S. Const. amend. V..............................................................1, 13

U.S. Const. amend. XIV ....................................................1, 13, 19

**Statutes**

28 U.S.C. § 1738 ..................................................................22

43 U.S.C. § 372 ................................................................2, 4, 5

43 U.S.C. § 617 ................................................................3, 4, 6

Boulder Canyon Project Act, 43 U.S.C. § 617 *et seq*...........................................3

**Treatise**

40A Cal. Jur. 3d *Judgments* § 200 (2023) ..............................................25

**Other Authorities**

Reed D. Benson, *Whose Water Is It? Private Rights and Public Authority Over Reclamation Project Water*, 16 Va. Env't L.J. 363 (1997) ..............................8

Br. of Imperial Irr. Dist. in Opp'n to Pet. for Cert., *Abatti v. Imperial Irr. Dist.*, 141 St. Ct. 2856 (2021) (No. 20-1376), 2021 WL 2209976 ..............................7

Pet. for Cert., *Bryant v. Yellen*, 447 U.S. 352 (1980) (*Imperial Irr. Dist. v. Yellen*, No. 79-435) ..............................9

Pet'r Br., *Bryant v. Yellen,* 447 U.S. 352 (1980) (*Imperial Irr. Dist. v. Yellen,* No. 79-435), 1980 WL 672720..............................10

Plaintiffs are owners of farms entitled to receive water from a federal reclamation project. Defendant Imperial Irrigation District is a state entity that manages the water. The District has moved to dismiss Plaintiffs' Second Amended Complaint (Doc. 16) ("SAC") for failure to state a claim. To survive such a motion, a complaint need only "state a claim for relief that is 'plausible on its face.' The facts in the complaint are liberally construed in the plaintiff's favor and are generally accepted as true." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992 (9th Cir. 2012). Judged by this standard, the District's motion to dismiss should be denied. First, Plaintiffs' usufructuary right to project water is a constitutionally protected property interest. At the urging of this very District, the Supreme Court held that parcels of land in the District that are entitled to receive project water are entitled to water in amounts determined based on a "beneficial use" standard under federal law. *See Bryant v. Yellen*, 447 U.S. 352 (1980). Second, Plaintiffs have stated claims for violations of their rights under the Constitution's takings, due process, and equal protection clauses because the District's 2022 Equitable Distribution Plan ("EDP") (Doc. 18-1, Ex. B) purports to limit Plaintiffs' use of water to less than the amount to which they are entitled under a beneficial use standard. Finally, Plaintiffs' claims are not barred by res judicata.

## I.    PLAINTIFFS HAVE PROPERTY INTERESTS IN THE USE OF PROJECT WATER.

The District's memorandum ("Mem.") argues that Plaintiffs have no constitutionally protected property interest in the use of project water (save for a mostly illusory right to "water service," *see Abatti v. Imperial Irr. Dist.*, 52 Cal. App. 5th 236, 262 (2020)). Yet governing law makes clear that Plaintiffs do indeed have such an interest—and that "beneficial use" is the measure of their usufructuary rights. Moreover, the District is estopped from arguing otherwise because it prevailed in *Bryant* by arguing that those who receive project water have a property interest in the beneficial use thereof.

### A.    State and Federal Law Establish Plaintiffs' Property Interests.

The Constitution protects against official expropriation of private property. *See* U.S. Const. amends. V; XIV, § 1. But "[p]roperty interests" themselves "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law," *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), or federal statutes, *see Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Carnes v. Parker*, 922 F.2d 1506, 1509–10 (10th Cir. 1991).

Here, Plaintiffs' property interests arise from the interplay between the federal Reclamation Act and Boulder Canyon Project Act and California law. "In passing the Reclamation Act, Congress sought to make water rights available for the benefit of those persons who would use the water to reclaim the land." *Klamath Irr. Dist. v. United States*, 227 P.3d 1145, 1159 (Or. 2010). To that end, the Act provides that "[t]he right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right." 43 U.S.C. § 372 (originally enacted as Reclamation Act of 1902, ch. 1093, § 8, 32 Stat. 388, 390).

The Supreme Court has repeatedly held that, by virtue of this statutory provision, landowners whose parcels are entitled to use of water from federal reclamation projects have property interests in that use. "[I]t long has been established law that the right to the use of water … for a beneficial use … is a property right, which, when acquired for irrigation, becomes, by state law and here by expressed provision of the Reclamation Act as well, part and parcel of the land upon which it is applied." *Nevada v. United States*, 463 U.S. 110, 124 (1983) (quoting *Ickes v. Fox*, 300 U.S. 82, 95–96 (1937)). "Appropriation was made … under the Reclamation Act, for the use of the landowners; and by the terms of the law …, the water rights became the property of the landowners, wholly distinct from the property right of the government in the irrigation works." *Ickes*, 300 U.S. at 95. Pursuant to "§ 8 of the Reclamation Act," "[t]he property right in the water right … is appurtenant to the land …. The water right is acquired by perfecting an appropriation, i.e., by an actual diversion followed by an application within a reasonable time of the water to a beneficial use." *Nevada*, 463 U.S. at 125–26 (quoting *Nebraska v. Wyoming*, 325 U.S. 589, 614 (1945)); *see also Rank v. Krug*, 90 F. Supp. 773, 793 (S.D. Cal. 1950) (A "reservation of vested private water rights … is found in Sec. 8 of the Reclamation law[].""). Official interference with landowners' rights to use project water thus triggers

constitutional protections against governmental takings or deprivations of property without either due process or just compensation. *See Dugan v. Rank*, 372 U.S. 609, 625 (1963).

Here, it is undisputed that the water in which Plaintiffs claim a property interest is "Project water" (i.e., water from a federally funded reclamation project, *see Kittitas Reclamation Dist. v. Sunnyside Valley Irr. Dist.*, 626 F.2d 95, 99 (9th Cir. 1980)). As the District acknowledges, *see* Mem. at 5 & n.5, the water at issue here is derived from a project governed by the 1928 Boulder Canyon Project Act ("Project Act"). *See* Pub. L. No. 70-642, 45 Stat. 1057, codified at 43 U.S.C. §§ 617–19; *Bryant*, 447 U.S. at 355; *Abatti*, 52 Cal. App. 5th at 253. Under the authority conferred by the Project Act, *see* 43 U.S.C. §§ 617c, 617d, the United States and the District entered a contract in 1932 for the delivery of project water to the District, specifying the lands to which the District was to supply the water. The contract became effective on July 1, 1933. *See Bryant*, 447 U.S. at 360–62. Water from federal works undertaken pursuant to the Project Act is to be used "[f]irst, for river regulation, improvement of navigation, and flood control; second, for irrigation and domestic uses and satisfaction of present perfected rights in pursuance of Article VIII of [the] Colorado River compact; and third, for power." 43 U.S.C. § 617e. A "present perfected right[]" under that Compact is defined as "a water right acquired in accordance with state law [and existing as of June 25, 1929], which right has been exercised by the actual diversion of a specific quantity of water that has been applied to a defined area of land or to definite municipal or industrial works." *Arizona v. California*, 376 U.S. 340, 341 (1964). And the Supreme Court has held that, "as a matter of state law … as of the effective date of the Project Act" in 1929, this very District's water "right was equitably owned by the beneficiaries to whom the District was obligated to deliver water," and hence those users' entitlements were "perfected rights protected by the Project Act." *Bryant*, 447 U.S. at 371–72 (footnote omitted).

Section 13 of the Boulder Canyon Project Act provides that "[t]he conditions and covenants referred to herein shall be deemed to run with the land and the right, interest, or privilege therein and water right, and shall attach as a matter of law, … and shall be deemed

to be for the benefit of and be available to … the users of water therein or thereunder ….” 43 U.S.C. § 617*l*(d).  And Section 14 states that the Act “shall be deemed a supplement to the reclamation law [of 1902], which … shall govern the construction, operation, and management of the works herein authorized.”  43 U.S.C. § 617m.  That includes Section 8 of the Reclamation Act, or 43 U.S.C. § 372.  “[T]he intention of Congress in specifically making … [a] project subject to the Reclamation Laws [i]s that such private [water] rights of landowners … should be recognized in connection with the construction and operation of any of the works provided in the project ….”  *Rank*, 90 F. Supp. at 795.

By virtue of all these interrelated provisions, Plaintiffs own usufructuary rights that amount to property interests—and that entitle them to project water in amounts determined under a “beneficial use” standard.  Because the District’s 2022 EDP purports to limit Plaintiffs to less than that amount of water, the EDP violates their property rights.

The District responds that Section 8 of the Reclamation Act does not apply to the water at issue here, leaning on this phrase in the Act: “[t]he right to the use of water *acquired under the provisions of this Act* shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right.”  43 U.S.C. § 372 (emphasis added).  Pointing to the italicized language, the District argues that its own “water rights were acquired by appropriation in accordance with California law—not under the Reclamation Act,” and insists that “Plaintiffs cannot, on the one hand, admit that [the District’s] water rights were acquired under state law, but, on the other hand, claim that federal law created a farmer water right in [those] water rights.”  Mem. at 13.

On the contrary, Plaintiffs claim exactly that.  “[T]he Reclamation Act does not … independently define who owns interests in the water of Bureau projects ….”  *Klamath Irr. Dist. v. United States*, 67 Fed. Cl. 504, 516 (2005).  Instead, as the Supreme Court has explained, the Reclamation Act provides that “once the waters [a]re released from [a reclamation project], their distribution to individual landowners” is “controlled by state law.”  *California v. United States*, 438 U.S. 645, 665, 667 (1978).  Section 8 of the Act “refers … to water ‘acquired under the provisions of this Act,’ which ‘provisions’ require

the claimant to obtain those rights in accordance with state law." *Klamath*, 67 Fed. Cl. at 516. In other words, since the Reclamation Act *itself* provides that the acquisition of rights to receive project water is determined by state law, any such water rights acquired pursuant to state law are necessarily "acquired under the provisions of th[e] Act." 43 U.S.C. § 372; *see also Strawberry Water Users Ass'n v. United States*, 576 F.3d 1133, 1135 (10th Cir. 2009). There is therefore nothing contradictory about stating that Plaintiffs' "water rights were acquired under state law" while also arguing that the Reclamation and Project Acts "create[] a farmer water right." Mem. at 13. Because Plaintiffs are entitled to at least some water from the reclamation project in question under California law, *see Abatti*, 52 Cal. App. 5th at 262–63, their water rights were "acquired under the provisions of th[e] [Reclamation] Act," 43 U.S.C. § 372.

But in this context state law does not operate in isolation. Although "state law governs the acquisition, distribution, and use of reclamation project water," this is so only "if it is not inconsistent with congressional directives." *United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 212 (9th Cir. 1989) (*Alpine III*). Indeed, "Congress did not intend to relinquish total control of the actual distribution of the reclamation water to the States." *California*, 438 U.S. at 668 n.21. As the Supreme Court has explained in its "cases interpreting § 8 of the 1902 Reclamation Act, … state water law does not control in the distribution of reclamation water *if* inconsistent with other congressional directives …." *Id.* The directive governing here is "§ 8 itself," which provides "that the water right must be appurtenant to the land irrigated and governed by beneficial use." *Id.* As a result, "state law cannot prevent [p]roject properties entitled to receive water from receiving less than a water duty maximizing the property's contemporary beneficial use." *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217, 1229 (9th Cir. 1989) (*Alpine II*). Because § 8 "mandat[es] a beneficial use inquiry in place of any contrary dictate of state law," *Alpine III*, 887 F.2d at 212, a court determining a landowner's entitlement to project water is "not bound by … [state law] if [it] point[s] to a different water duty than a beneficial use inquiry would indicate." *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 855

(9th Cir. 1983) (*Alpine I*); *accord United States v. Clifford Matley Fam. Tr.*, 354 F.3d 1154, 1163 (9th Cir. 2004).

These intertwined bodies of state and federal law establish that Plaintiffs have a constitutionally protected property interest in "beneficial use" of the project water under the District's management. The Reclamation Act provides that state law governs which property owners are entitled to project water, California law provides that Plaintiffs are among those so entitled, *see Abatti*, 52 Cal. App. 5th at 262–63, and the Reclamation Act establishes the extent of each Plaintiff's entitlement to that water: "beneficial use." "[T]he Reclamation Act … recognizes that … water put to beneficial use on privately owned land will become appurtenant to the land" and that this "right" of "the landowner" attaches "permanently." *See Klamath Irr. Dist.*, 227 P.3d at 1163 n.21); *accord Lawrence v. Southard*, 73 P.2d 722, 724, 728 (Wash. 1937); *Rank*, 90 F. Supp. at 799. Plaintiffs' water rights are reinforced by the Project Act, which provides that water from the project at issue here is to be used, among other things, to satisfy "present perfected rights in pursuance of Article VIII of [the] Colorado River compact." 43 U.S.C. § 617e. These rights "run with the land and the … water right" is "for the benefit of … the users of water." *Id*. § 617*l*(d).

Despite the District's repeated assertions, *see* Mem. at 1–2, 9–12, 18, the California Court of Appeal's holding in *Abatti* is not to the contrary. There, the court concluded that the applicable California statutes did not, by themselves, confer upon Abatti and the other plaintiffs a constitutionally protected property interest in anything except for "water service." *Abatti*, 52 Cal. App. 5th at 262–63, 266. But the court did not cite the Reclamation Act at all, except in making an unrelated point, nor did the plaintiffs in *Abatti* cite that Act as establishing or delineating their property interests in project water. Indeed, in responding to the plaintiffs' petition for a writ of certiorari in the *Abatti* litigation, the District itself argued that the plaintiffs "never raised any argument below that § 8 of the Reclamation Act grants them a right to a certain allocation of water from the Colorado River.… Nor did either of the courts below pass on that question." Br. of Imperial Irr. Dist. in Opp'n to Pet. for Cert. at 17, *Abatti v. Imperial Irr. Dist.*, 141 St. Ct. 2856 (2021)

(No. 20-1376), 2021 WL 2209976, at * 17.  For this reason, *Abatti* is not even persuasive authority; the decision did not address, and does not support, the District's contention here that Plaintiffs here have no constitutionally protected property interest in project water protected by the Reclamation or Project Acts.

The District nonetheless maintains that, "[a]s a matter of law, [the District] is the sole owner of its water rights to its Colorado River water." Mem. at 1.  But the Supreme Court held to the contrary in *Bryant*: "as a matter of state law, not only did the District's water right entitle it to deliver water to the farms in the District ..., but also *the right was equitably owned by the beneficiaries to whom the District was obligated to deliver water*." *Bryant*, 447 U.S. at 371 (emphasis added) (footnote omitted).  More recently, the California Court of Appeal likewise held that "[t]he farmers are beneficial owners of the District's water rights," and the farmers' interest is "constitutionally protected." *Abatti*, 52 Cal. App. 5th at 263.  The District attempts to brush these holdings aside, insisting that, "[f]ar from supporting Plaintiffs' arguments that they have a federally protected water right ... in [the District's] water," these cases "confirm[] that [the District's] water rights were acquired under California law ...." Mem. at 9.  As explained above, however, Plaintiffs' constitutional property interest is entirely consistent with their acquisition of that interest in part under state law:  "state law governs the acquisition, distribution, and use of reclamation project water, and vested rights acquired thereunder" but only "if it is not inconsistent with congressional directives." *Alpine III*, 887 F.2d at 212.  And even if state law would limit the *extent* of Plaintiffs' water rights to mere "water service," Section 8 of the Reclamation Act overrides that limit by "mandating a beneficial use inquiry in place of any contrary dictate of state law." *Id.* (citing 43 U.S.C. § 372).  *Alpine III* is binding here.

In fact, the Ninth Circuit has expressly recognized landowners' property interests in reclamation-project waters, noting in a decision involving the 1902 Reclamation Act that, "[a]s a water district responsible for managing a reclamation project," the irrigation district in that case "d[id] not directly own any water rights.  Rather, the landowners within the service area irrigated by the [reclamation] Project [at issue] own water rights." *Truckee-*

*Carson Irr. Dist. v. Sec'y of Dep't of Interior*, 742 F.2d 527, 530 (9th Cir. 1984). The same is true here: It is Plaintiffs who have constitutionally protected property interests in the beneficial use of project water managed by the District.

The District tries to distinguish *Truckee-Carson* by contending that the irrigation district "held managerial rights—not water rights…. Here, unlike [in *Truckee-Carson*], [the District] acquired all Colorado River water rights for the Imperial Valley from the early landowners," and has "sole ownership of the water rights." Mem. at 15. But although *Truckee-Carson* did point out that the district in that case had only "managerial" rights to project water, that was *not* the basis for the court's holding that "the landowners … own[ed] water rights"; rather, the basis for that holding was simply the fact that the district was "a water district responsible for managing a reclamation project." The same is of course true of the District here. And it makes sense that the same result should obtain in this case as in *Truckee-Carson*, given that it is federal law (as opposed to some ephemeral notion of "managerial" rights) that gives to rise to landowners' property interests in the beneficial use of project water. *See Nevada*, 463 U.S. at 124–26; *Ickes*, 300 U.S. at 95–96; *Nebraska*, 325 U.S. at 614; Reed D. Benson, *Whose Water Is It? Private Rights and Public Authority Over Reclamation Project Water*, 16 Va. Env't L.J. 363, 389 (1997) ("Since Congress intended land owners to be the beneficiaries of the reclamation program, and since districts are only intermediaries in that program, a state law purporting to vest property rights in the district might be … invalid notwithstanding section 8's preference for state law."). It is "the Reclamation Act" in conjunction with state law that makes "clear that the entity that applies the water to beneficial use has a right that is more than a contractual right." *United States v. Pioneer Irr. Dist.*, 157 P.3d 600, 609 (Idaho 2007). And the District's attempt to distinguish *Truckee-Carson* by claiming "sole ownership of the water rights" fails because the District does *not* have "sole ownership" of those rights. As was explained earlier, "the District's water right … [i]s equitably owned by the beneficiaries to whom the District [i]s obligated to deliver water," *Bryant*, 447 U.S. at 371 (footnote omitted), and "[t]he farmers are beneficial owners of the District's water rights," *Abatti*, 52 Cal. App. 5th at 263.

**B.    The District Is Estopped From Denying That Plaintiffs Have a Property Interest in Beneficial Use of Project Water.**

Much of District's argument directly contradicts the positions expressly advocated by the District, and accepted by the Supreme Court, in *Bryant*. Judicial estoppel bars the District from reversing its prior position to suit the moment.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "[J]udicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation," but also bars "incompatible statements in two different cases." *Id.* at 783. In considering whether to apply judicial estoppel, a court "look[s] at several factors, including: (1) Is the party's later position 'clearly inconsistent with its earlier position?' (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position 'derive an unfair advantage or impose an unfair detriment on the opposing party?'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

The criteria for judicial estoppel are satisfied in this case. The District's petition for certiorari in *Bryant* argued that

> The Court of Appeals believes that under California law the landowner has no vested right appurtenant to the land (we think that this conflicts not only with California law but also with § 8 of the Reclamation Act of 1902) …. Although it is true that the District holds the legal title to the water rights, it holds this title in trust for the landowners, who own the beneficial interest…. The notion that the District alone is protected against impairment of present perfected rights, and not the landowners who are the equitable owners of those rights under the laws of California, is also in collision with § 8 of the Reclamation Act of 1902.

Pet. for Cert. at 2–3, 16–17, *Bryant*, 447 U.S. 352 (*Imperial Irr. Dist. v. Yellen*, No. 79-435). The District's opening merits brief in the same case took the same positions:

> The Court of Appeals argues that the District, not the landowners, owns the decreed present perfected rights, and, therefore, the District can "redistribute"

the water that is taken away from excess lands.  This contention is quite untenable, both factually and legally.…  [A]s a matter of California law, the District is merely the trustee of water rights for the landowners, who are the beneficial owners, and their beneficial interest is a constitutionally protected property right which is appurtenant to the land irrigated.  Section 6 [of the Project Act] directs that these rights be satisfied; there is no authority for taking them.  As a matter of federal law, § 8 of the Reclamation Act of 1902 stipulates that rights to use of water supplied through federal works shall be appurtenant to the land irrigated, and § 13(d) of the Project Act prescribes that the "covenants" in § 13(c) (which subject all rights of the … water users to the Colorado River compact) shall "run with the land."  This includes, by definition, the Compact term "present perfected rights," as adopted by the Project Act.

Pet'r Br. at 32–33, *Bryant,* 447 U.S. 352 (*Imperial Irr. Dist. v. Yellen,* No. 79-435), 1980 WL 672720, at *18–19.  As these passages demonstrate, the District's position here that Plaintiffs lack "a federally and constitutionally protected ownership right in [the District's] water rights," Mem. at 4, is "clearly inconsistent" with the District's position in *Bryant*. *New Hampshire*, 532 U.S. at 751.

Moreover, the Court in *Bryant* accepted, and evidently relied on, the District's assertions in that case about landowners' water rights: "not only did the District's water right entitle it to deliver water to the farms in the District regardless of size, but also the right was equitably owned by the beneficiaries to whom the District was obligated to deliver water." *Bryant*, 447 U.S. at 371 (footnote omitted).  This was the rule "as a matter of state law … as of the effective date of the Project Act" in 1929, and hence these entitlements were "perfected rights protected by the Project Act." *Id.* at 371–72; *see also id.* at 371 n.22 ("While the source of present perfected rights is to be found in state law, the question of whether rights provided by state law amount to present perfected rights within the meaning of § 6 [of the Project Act] is obviously one of federal law.").  The Court accordingly declined to apply the acreage limitation set forth in a separate 1926 law governing reclamation projects, reasoning that doing so "would go far toward … substantially limiting … rights of[] the farmer-beneficiaries in the District." *Id.* at 373 (footnote omitted).  And while the Court did acknowledge the possibility that "no

individual farm in the District has a permanent right to any specific proportion of the water held in trust by the District," *id.* at 371, this concession is immaterial to the present case, since Plaintiffs do not claim "a permanent right to any specific proportion of the water"; they claim only the right to use water measured by the "beneficial use" standard. All told, this is more than enough to show that the District's statements in *Bryant* regarding landowners' rights to project water were accepted by the Supreme Court. *Cf. Baughman*, 685 F.3d at 1133 ("For a court to be misled, it need not itself adopt the statement ….").

Finally, the application of judicial estoppel is appropriate in this case because, by "assert[ing] an inconsistent position," the District otherwise could "'derive an unfair advantage or impose an unfair detriment'" on Plaintiffs. *See id.* (quoting *New Hampshire*, 532 U.S. at 751). "Having convinced th[e] [Supreme] Court to accept one interpretation" of landowners' rights to project water in *Bryant*, "and having benefited from that interpretation," the District "now urges an inconsistent interpretation to gain an additional advantage at [Plaintiffs'] expense"; to allow such opportunism here would "undermin[e] the integrity of the judicial process." *See New Hampshire*, 532 U.S. at 755.[1]

The District in this case denies this obvious inconsistency, favorably quoting the California Court of Appeal's basis for rejecting a state-law judicial-estoppel argument in *Abatti*: "'[i]t is not unreasonable, much less irreconcilable, that the District emphasized landowners' rights in *Bryant*, but underscores its own discretion and authority here; in both instances, the District was defending its authority to distribute water.' *Abatti*, 52 Cal. App. 5th at 307." Mem. at 21. But the *Abatti* court's analysis of this issue is not controlling, as the court was applying the criteria for judicial estoppel under *California* law, *see Abatti,* 52 Cal. App. 5th at 307 (citing *Aguilar v. Lerner*, 32 Cal. 4th 974, 986 (2004)), whereas "federal law governs the application of judicial estoppel in federal court," *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 603 (9th Cir. 1996). And the analysis in

---

[1] The District's insistence that judicial estoppel is not a cause of action, *see* Mem. at 19–20, is a red herring. Plaintiffs invoked judicial estoppel only as a preemptive response to any contention by the District that Plaintiffs had no property interest in project water.

*Abatti* is plainly unsound by federal standards. The *Abatti* court reasoned that the District's patently inconsistent positions were not in conflict, explaining that, while "the District emphasized landowners' rights in *Bryant*" but "underscores its own discretion and authority here," "in both instances, the District was defending its authority to distribute water." *Abatti*, 52 Cal. App. 5th at 307. The apparent premise of this reasoning is that the District's conflicting positions were justified because it had the same motivation in making them. Under federal law, however, that is *not* a relevant consideration in determining whether judicial estoppel applies: "It is the position stated, not the motivation behind the position, that guides [the] analysis." *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997).

Furthermore, the District's argument that landowners such as Plaintiffs have no federally recognized usufructuary interest in project water is barred by collateral estoppel, or issue preclusion, since this issue was litigated and determined by the *Bryant* litigation (to which the District was a party), and the Supreme Court held that the landowners indeed had such a right. The preclusive effect of a federal court's judgment in a case where federal law supplies the rule of decision (as it did in *Bryant*) is controlled by federal law. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). This is true "whether or not the issue arises on the same or a different claim." *New Hampshire*, 532 U.S. at 748–49. Thus, when the party against whom preclusion is asserted was a party to the prior litigation, "a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action," even if "the determination was reached upon an erroneous view or by an erroneous application of the law." *Montana*, 440 U.S. at 162 (emphasis omitted) (quoting *United States v. Moser*, 266 U.S. 236, 242 (1924)). The Ninth Circuit has accordingly held that the question of a party's ownership interest in certain property, once decided by a final judgment, cannot be relitigated by that party in a subsequent action without a change in governing law or material facts. *See Kamilche Co.*

*v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995). Here, as was explained earlier, the District and the United States actually contested the issue of landowners' rights to project water in the *Bryant* litigation. The Supreme Court's decision in that case ultimately adopted the District's view that the landowners had the usufructuary rights to that water, and the Court's agreement with the District on this point was a necessary part of its holding that the 160-acre limitation in a different federal reclamation law did not apply to farms served by the District. *See Bryant*, 447 U.S. at 373 ("To apply [the acreage limitation] would go far toward … substantially limiting … the rights of[] the farmer-beneficiaries in the District."). The District is thus collaterally estopped from relitigating this issue here.

## II. THE EDP EFFECTS AN UNCONSTITUTIONAL TAKING OF PLAINTIFFS' PROPERTY.

### A. Plaintiffs Have Stated a Takings Claim.

As explained above, Plaintiffs' usufructuary right to project water, measured by the beneficial use standard, is a constitutionally protected property interest. That being so, the District's 2022 EDP amounts to a taking in violation of the Constitution's command that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V; *see also* U.S. Const. amend. XIV, § 1.

Plaintiffs are subject to the District's EDP and its limitations on their use of project water. "Under the 2022 EDP, the District will cut the amount of irrigation water that it delivers to Plaintiffs, for 2022, by approximately 8.5%, a significant amount," leaving Plaintiffs with less water than the amount to which they would be entitled under a "beneficial use" standard. SAC ¶¶ 111, 113, 118. California's "Irrigation District Law … give[s] [the District] authority to withhold irrigation water deliveries from its landowners" for various reasons, including to enforce a water distribution plan. *Inzana v. Turlock Irr. Dist. Bd. of Dirs.*, 35 Cal. App. 5th 429, 452 & n.20 (2019) (citing Cal. Water Code §§ 22252.1, 22252.3, 22255–57). Thus, the District's enforcement of the EDP's limits will prevent Plaintiffs from using project water in which they have a property interest. Federal caselaw makes clear that this is an unconstitutional taking.

When a property owner has the "right … to the use of … water" from a particular

22cv1323-MMA-KSC

source, and water to which he or she is entitled "[i]s withdrawn … and turned elsewhere by government requisition," the government has "acquire[d] rights that d[o] not belong to it and for which it [i]s bound by the Constitution to pay." *Int'l Paper Co. v. United States*, 282 U.S. 399, 407 (1931) (Holmes, J.). This is true even when the property owner's "right [to the use of water] [i]s only partially impaired," since "in the physical taking jurisprudence any impairment is sufficient. … [A] partial impairment of the [property owner's] water rights [i]s a taking." *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1292 (Fed. Cir. 2008). An unconstitutional "seizure of water rights need not necessarily be a physical invasion of land. It may occur upstream …. [W]hen the Government … 'depriv[es] the owner of its profitable use, … compensation should be made.'" *Dugan*, 372 U.S. at 625 (quoting *Peabody v. United States*, 231 U.S. 530, 538 (1913)). Here, the District's 2022 EDP provides for the governmental "withdraw[al]" of a significant amount of project water to which Plaintiffs have a usufructary right, and this "impairment of … water rights" is a *per se* taking.

## B. Plaintiffs' Takings Claim Is Ripe.

The District contends that "Plaintiffs' takings claim fails for the additional reasons that their alleged damages are wholly speculative," in that "they do not allege that they have actually been deprived of any water" or "that they could not obtain water from the Clearinghouse." Mem. at 17. This argument is meritless; Plaintiffs' claims are ripe.

"[A] federal court should not consider [a takings] claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021) (per curiam) (citation omitted). But "[t]he finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question … about how the regulations at issue apply to the particular land in question.'" *Id.* at 2230 (cleaned up) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)). In *Pakdel*, for instance, the Court held that this requirement was satisfied, explaining that "there is no question that the government's definitive position on the issue has inflicted an actual, concrete injury of requiring petitioners to choose between surrendering possession of their property or facing

the wrath of the government." *Id.* (cleaned up). In another case, the Court allowed a pre-enforcement takings challenge to a rent-control ordinance because "the Ordinance will be enforced against [the plaintiffs]. The likelihood of enforcement, with the concomitant probability that a landlord's rent will be reduced below what he or she would otherwise be able to obtain in the absence of the Ordinance, is a sufficient threat of actual injury" for the Court to adjudicate the takings claim. *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988).

Here, there is "no question" that Plaintiffs are subject to the 2022 EDP and its limits on their use of project water. And the allegations in Plaintiffs' Complaint—which are to be taken as true at the motion-to-dismiss stage, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)—make clear that "[u]nder the 2022 EDP, the District will cut the amount of irrigation water that it delivers to Plaintiffs, for 2022, by approximately 8.5%, a significant amount," and that the 2022 EDP entitles Plaintiffs to less water than the amount to which they would be entitled under a "beneficial use" standard. SAC ¶¶ 111, 113, 118. Because the District intends to enforce the EDP's limits, there is nothing "speculative" about Plaintiffs' takings and due-process claims. And since the 2022 EDP will limit Plaintiffs' use of water in which they claim a property interest, the modest "finality" requirement for asserting a takings claim is easily satisfied. *See Pakdel* 141 S. Ct. at 2230; *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013); *Pennell*, 485 U.S. at 8.

The District speculates that Plaintiffs might be able to buy water from the Clearinghouse to replace the quantities of project water that will be wrongly withheld from them pursuant to the 2022 EDP. But that is no reason to defer consideration of Plaintiffs' takings claims. The Supreme Court has held that, "no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019). Here, when the District withholds from Plaintiffs the use of project water to which they are entitled under a beneficial use standard, a taking has occurred, and Plaintiffs may seek judicial relief. Like any other administrative "procedures the government puts in place to remedy a taking"

after the fact, the uncertain prospect that Plaintiffs *might* be able to replace the wrongly withheld water by purchasing water from the Clearinghouse does not affect their right to bring a takings claim in federal court. *See also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012–13 (1992).

## III. Plaintiffs Have Alleged a Violation of Their Due Process Rights.

Plaintiffs' Second Amended Complaint laid out the ways in which the 2022 EDP allows the District to make changes in landowners' entitlement to project water without adequate procedural safeguards to protect against wrongful deprivation of Plaintiffs' property interest in use of that water. *See* SAC ¶¶ 155–70. The EDP vests the District's Board with discretion to terminate the annual appropriation of water to users, or to reduce the amount of water delivered to users, at any time without regard to the "beneficial use" standard. Because the EDP does not guarantee water users notice and opportunity to be heard when the Board exercises this discretion, the EDP violates the Due Process Clause.

Several provisions of the 2022 EDP (Doc. 118-1) reflect this violation. Section 3.2 of the EDP states that the default method of apportionment for Agricultural Water Users "may be changed" for any calendar year "at the discretion of the [District's] Board of Directors." Section 8.3 provides that "[i]n the event of a Water Management Reduction, the … Board of Directors, at its sole discretion, may take any actions it determines and finds are necessary to protect the public health and safety." Finally, the Board "may terminate the implementation of an annual Apportionment at any time at its discretion or upon recommendation of the Agricultural Water Advisory Committee." EDP § 8.4.

These aspects of the EDP violate Plaintiffs' constitutional rights. A combination of federal statutes establishes Plaintiffs' property interest in the "beneficial use" of project water: "'that measure of water, which by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions.'" *Clifford Matley Fam. Tr.*, 354 F.3d at 1163 (quoting *Alpine I*, 697 F.2d at

854). Thus, the quantity of water a given tract is allowed under this standard "[i]s essentially a question of fact." *Alpine I*, 697 F.2d at 856. Because the sources of law that establish Plaintiffs' property interest in the use of project water allow for the denial of such use "only upon proof of certain contingencies"—i.e., that a landowner has already used the maximum amount allowed under a beneficial use standard—the relevant "law has engendered a clear expectation of continued enjoyment" of this usufructuary right "absent proof" that the beneficial-use allotment has been satisfied, and this expectation triggers procedural due-process protection. *Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979). And when a "statutory scheme makes" a particular finding "an important factor in [an official] determination to deprive an individual" of such an expected entitlement, government "may not, consistently with due process, eliminate consideration of that factor in its prior hearing." *Bell v. Burson*, 402 U.S. 535, 541 (1971).

The 2022 EDP, however, gives the District wide discretion to cut off Plaintiffs' access to project water without regard to the beneficial use standard, and does not require the District to give water users pre-termination—or even *post*-termination—notice or opportunity to be heard. This procedure is constitutionally deficient, first, because "the risk of an erroneous deprivation" of Plaintiffs' property "interest through the procedure[]" is high, *Mathews*, 424 U.S. at 335; the EDP does not require the District to even consider, let alone hold a hearing, to determine whether cutting off a landowner's access to project water would deprive that person of water to which he or she is entitled under a beneficial use standard, a fact-bound determination that ordinarily requires consideration of evidence.

What is more, "[o]rdinarily, due process of law requires an opportunity for 'some kind of hearing' *prior* to the deprivation of a … property interest." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) (emphasis added). The Supreme Court held that "[t]he factors that have justified exceptions to the requirement of some prior process [we]re not present" in a case involving termination of state-provided "utility service": "the cessation of essential services for any appreciable time works a uniquely final deprivation." *Id.* at 20. Similarly, the Court later held that "[t]he need for some form of pretermination

hearing" before public employees are terminated was "evident" given "the severity of depriving a person of the means of livelihood." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985). These holdings make the necessity of pre-deprivation process clear in this case: Plaintiffs risk losing access to water necessary to irrigate their crops, which would constitute a deprivation of both a utility (water service) *and* their means of earning a livelihood (farming). The 2022 EDP does not provide for this crucial procedural protection. Indeed, it does not even provide for a *post*-deprivation hearing. Because there is no hearing at all, the provisions allowing the District discretionary power to deny project water to landowners therefore violate the Due Process Clause.

The District responds that, "as a matter of law, Plaintiffs are wrong when they allege that [the District] has 'unfettered discretion' to 'terminate or reduce water at any time.' Far from it, [the District]'s distribution of its water is governed by and judged under state law." Mem. at 18 (quoting SAC ¶¶ 166–70). But the District does not cite any provision of state law that could possibly afford Plaintiffs adequate procedural protections against wrongful withholding of project water. On the contrary, the authorities the District relies on only *confirm* that the EDP is violative of procedural due-process principles: "Under California law, IID retains discretion to modify service consistent with its duties to manage and distribute water equitably for all categories of users served by the District. The California Irrigation District Law does not tell IID how to balance the competing needs of its users, and the extent to which IID balances these obligations implicates questions of discretion and policy, not rights." Mem. at 18 (cleaned up). But this description of California law does not speak to the issue of the District's discretion to reduce or deny water delivery to a particular landowner—and to the extent it does, it actually confirms the procedural-due-process problems with the District's discretion.

The EDP provisions vesting the District with seemingly unconstrained discretion to withhold project water do not weaken Plaintiffs' claim of a property interest in that water for due-process purposes. "[M]inimum procedural requirements are a matter of federal law[;] they are not diminished by the fact that the State may have specified its own

procedures that it may deem adequate for determining the preconditions to adverse official action." *Cleveland Bd. of Educ.*, 470 U.S. at 541 (cleaned up). A combination of state law and several federal statutes give Plaintiffs a property interest in the use of project water, and the District "'may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" *Id.* (citation omitted).

## IV. PLAINTIFFS HAVE ALLEGED A VIOLATION OF THE EQUAL PROTECTION CLAUSE.

The 2022 EDP also denies Plaintiffs "equal protection of the laws," in violation of the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1, cl. 4. The EDP arbitrarily singles out farmers, including Plaintiffs, for less favorable treatment than every other category of water user, including industrial and commercial water users.

The 2022 EDP divides water users into three categories: (1) Industrial/Commercial Water Users, (2) Potable Water Users, and (3) Agricultural Water Users. The EDP sets forth a "default Method of Apportionment" of water for each category. However, as these are only "default" apportionment methods, the District may use different apportionment methods. The EDP apportions water to Agricultural Water Users—i.e., farmers who use the water to irrigate their croplands—differently than it does to the other categories of water users. For instance, *non-farmers* receive the average amount of water they used in the last three years. The EDP refers to this as the "Three-Year Average Apportionment Method." EDP §§ 3.3-3.4. *Farmers*, by contrast, receive only *half* of the average amount of water they used between *one and two decades ago*, which amount is subject to a 10 acre-feet "maximum" or cap, plus an additional amount of water to be calculated on a "straight line" basis. The EDP refers to this as a "Hybrid Apportionment," which is "comprised of a historical use component and a straight line component." *See* EDP § 3.2.

The 2022 EDP discriminates against Agricultural Water Users, like Plaintiffs, who use water the District supplies to irrigate their farmland. The EDP allocates water to Industrial and Commercial Water Users based on a calculation of their average recent water use. But the EDP allocates to Agricultural Water Users only *half* of their average historical water use. The disfavored treatment of Agricultural Water Users compared to Industrial

or Commercial Water Users in the apportionment of water is arbitrary and irrational. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (intentional and arbitrary discrimination violates the Equal Protection Clause). The District has provided no rationale for the EDP's arbitrary and irrational classifications. *See* Mem. at 18–19.

Moreover, in its apportionment of water to different categories of water users, the 2022 EDP fails to recognize or consider that water users such as Plaintiffs have present perfected water rights under state and federal law. This oversight makes the equal-protection violation wrought by the EDP all the more obvious, since its classifications infringe upon Plaintiffs' constitutionally protected property interests in the use of project water. The Supreme Court "ha[s] long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966). Such a classification "cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). The 2022 EDP, in its apportionment of water between categories of water users, arbitrarily fails to account for whether a water user has water rights or present perfected rights under the federal law. Plaintiffs have such rights, which are constitutionally protected property interests. The 2022 EDP scheme of classifications of water users therefore violates equal protection.

## V. PLAINTIFFS' SUIT DOES NOT REQUIRE A PRIVATE RIGHT OF ACTION UNDER THE RECLAMATION ACT OR PROJECT ACT.

The District argues that Plaintiffs have failed to state a claim because there is no private right of action for violations of either the Reclamation Act or the Project Act. *See* Mem. at 12–13. The District cites a case affirming dismissal of a suit against a private party for allegedly selling water in violation of those statutes on this basis. *See Long v. Salt River Valley Water Users' Ass'n*, 820 F.2d 284, 289 (9th Cir. 1987). The District correctly states the law but misapplies it to this case.

It is irrelevant for purposes of this litigation that neither the Reclamation Act nor the

Project Act establishes a private right of action.  Unlike the claims of the plaintiff in *Long*, which were premised entirely on violations of those federal statutes, *see id*. at 285, Plaintiffs' claims in this case are for federal constitutional violations, and it is beyond debate that 42 U.S.C. § 1983 establishes a private right of action against state and local officials (as well as municipal or public corporations, such as the District) for such violations.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  The constitutional violation here is a deprivation or taking of property in violation of the Fourteenth Amendment; the Reclamation and Project Acts are merely "independent source[s]" of law that "define[]" the "dimensions" of the property interests Plaintiffs seek to vindicate.  *Roth*, 408 U.S. at 577.  But "federal constitutional law determines whether [an] interest rises to the level of … 'property,'" *Memphis Light*, 436 U.S. at 9, and whether that interest "has been abridged improperly," *Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011) (emphasis omitted).  And just as a "violation of state law … may give rise to a § 1983 claim for the deprivation of a property … interest," *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011), even though "[a]s a general rule, a violation of state law does not lead to liability under § 1983," *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998), so, too, is a deprivation of Plaintiffs' constitutionally protected property interest in project water actionable under Section 1983—even though some of the "independent source[s]" that give rise to that interest, *see Roth*, 408 U.S. at 577, are statutes that do not establish separate rights of action.  *See also Ward v. Downtown Dev. Auth.*, 786 F.2d 1526, 1531 (11th Cir. 1986) ("[T]hat the source of a property interest is state law does not render the deprivation of the property without due process any less a basis for § 1983 liability.").[2]

---

[2] Similarly, the District's argument (Mem. at 22) that Plaintiffs' claims do not present a federal question is frivolous.  Regardless of the source of Plaintiffs' property interests, a claim against the District for unconstitutional deprivation or taking of those interests presents a federal question and thus is actionable under 42 U.S.C. § 1983.  *See Memphis Light*, 436 U.S. at 9.  And it is hornbook law that federal "[j]urisdiction … is not defeated … by the possibility that the averments might fail to state a cause of action on which [a plaintiff] could actually recover."  *Bell v. Hood*, 327 U.S. 678, 682 (1946).

## VI. PLAINTIFFS' CLAIMS ARE NOT BARRED BY RES JUDICATA.

The District argues, *see* Mem. at 22–25, that Plaintiffs' suit is barred by res judicata, on the theory that their claims were already decided by the California courts in *Abatti*. The District is wrong.

Subject to federal due process requirements, California law controls the question of whether Plaintiffs' claims are barred by res judicata. *See* 28 U.S.C. § 1738. "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). Assuming *arguendo* that Plaintiffs here and the *Abatti* plaintiffs were in privity, res judicata does not apply because the cause of action here is not the same as in *Abatti*. In determining whether successive "suits are based on the same cause of action," California has adopted "the primary right theory," which holds "that a cause of action is comprised of a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act … constituting a breach of that duty.… [T]he primary right is simply the plaintiff's right to be free from the *particular injury* suffered." *Id.* at 904 (emphasis added) (cleaned up).

"The most important criterion in determining that two suits concern the same controversy" for purposes of California law "is whether they both arose from the same transactional nucleus of facts." *Hulsey v. Koehler*, 218 Cal. App. 3d 1150, 1157 (1990). "[C]ases involve distinct … primary rights where the injuries and wrongs associated with the two cases differ, regardless of the theories of recovery," or whether some theories asserted in the second case are the same "as theories pleaded in the first." *Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.*, 29 Cal. App. 4th 1828, 1837–38 (1994). Thus, "if two actions involve the 'same general subject matter'" but "'distinct episodes …,' the doctrine of res judicata does not apply." *The Inland Oversight Comm. v. City of San Bernardino*, 27 Cal. App. 5th 771, 780 (2018) (quoting *Plan. & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210, 228 (2009)); *accord Yates v. Kuhl*, 130 Cal. App. 2d 536, 540 (1955); *Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*, 36 Cal.

App. 5th 766, 784 (2019). For this reason, "[r]es judicata is not a bar to claims that arise after the initial complaint is filed." *Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 155 (2005). The result of this "significant limitation upon … the doctrine of res judicata" is that a judicial determination of "'a question of law … is not conclusive … in a subsequent action …, except where both causes of action arose out of the same subject matter or transaction ….'" *Bleeck v. State Bd. of Optometry*, 18 Cal. App. 3d 415, 430 (1971) (quoting *Louis Stores, Inc. v. Dep't of Alcoholic Beverage Control*, 57 Cal. 2d 749, 757 (1962)); *see also S. Pac. Co. v. Van Hoosear*, 72 F.2d 903, 906 (9th Cir. 1934) (applying California law) ("Decisions on mere questions of law do not operate as res judicata when divorced from the particular subject matter to which the law was applied, though they may be … precedents under the doctrine of stare decisis.") (cleaned up).

The California Supreme Court, applying these principles, has explained that "rulings of law, divorced from the specific facts to which they were applied, are not binding under principles of res judicata," citing a case in which preclusive effect was "denied as to [a] suit for income tax between [the] same parties raising [the] same legal issue but in different years." *Chern v. Bank of Am.*, 15 Cal. 3d 866, 872 (1976); *accord Louis Stores*, 57 Cal. 2d at 757; *Frommhagen v. Bd. of Supervisors*, 197 Cal. App. 3d 1292, 1300, 1301 (1987); *Silva v. Reclamation Dist. No. 1001*, 41 Cal. App. 326, 329–30 (1919). The Ninth Circuit, applying California law, similarly held that res judicata did not bar a plaintiff's suit alleging that a franchise agreement violated state unfair-competition laws—though that plaintiff had unsuccessfully sued the same defendant for similar reasons in the past—since the two actions "rest[ed] on two separate … franchise agreements." *Van Der Valk v. Shell Oil Co.*, 233 F. App'x 752, 754 (9th Cir. 2007). Notably, the second suit was not barred even though "substantially identical franchise agreements [we]re involved," and the plaintiff's claims in both cases were based "on the same theory." *Id.* at 754 (Kleinfeld, J., dissenting).[3]

---

[3] In some instances, relitigation of identical issues may be barred by collateral estoppel. But the District does not invoke collateral estoppel based on *Abatti*—only res judicata. *See* Mem. at 22–25. In any event, collateral estoppel applies only if "the issue sought to be

Here, the prior lawsuit against the District concerned the 2013 EDP, *see Abatti*, 52 Cal. App. 5th at 247, which the District repealed in 2018, *see* SAC ¶ 81. This lawsuit, on the other hand, challenges the 2022 EDP. *Id*. ¶¶ 8–9. The 2022 EDP is very different than the 2013 EDP. *Id*. ¶¶ 80-103. Although the District's two EDPs perhaps involve "the same general subject matter," *see Yates*, 130 Cal. App. 2d at 540, the District's adoption of the 2013 EDP and its adoption of the 2022 EDP were undoubtedly "factually distinct … episodes," and hence the present suit is not barred by res judicata, *see Plan. & Conservation League*, 180 Cal. App. 4th at 228. The inapplicability of res judicata is especially clear given that the present action presses claims based on a wrong—the 2022 EDP—that "ar[ose] after the initial complaint [wa]s filed" in the *Abatti* litigation. *Allied Fire*, 127 Cal. App. 4th at 155. It is irrelevant that the extent to which applicable statutes gave landowners property interests in project water was also an issue in *Abatti*; this is merely "a question of law," and a determination thereof "is not conclusive between the parties in a subsequent action" that, like the case at bar, did not "ar[ise] out of the same … transaction." *Bleeck*, 18 Cal. App. 3d at 430 (quoting *Louis Stores*, 57 Cal. 2d at 757). Even "a suit brought on similar or identical issues" of law as were decided in a prior action is not barred by res judicata if the two suits are based on factually distinct episodes, *Frommhagen*, 197 Cal. App. 3d at 1300—such as the District's promulgation of the 2013 EDP and a substantially different EDP in 2022. *See also Silva*, 41 Cal. App. at 329–30.[4] The present circumstances

---

precluded from relitigation" is "identical to that decided in a former proceeding" and was "actually litigated in [that] proceeding." *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990). The *Abatti* plaintiffs did not argue that the interplay of state and federal statutes created a property interest in project water, nor did the courts in *Abatti* decide the issue.

[4] A California court held on similar facts that res judicata did not bar a lawsuit challenging a local water authority's 2004 environmental impact report (EIR) for a proposed public works project, even though a 1999 EIR by the same defendant concerning the same project had been the subject of a prior judgment. In part, res judicata did not apply because "the 1999 EIR and 2004 EIR are factually distinct attempts to satisfy [the California Environmental Quality Act]'s mandates" such that the two "actions involved different causes of action." *Plan. & Conservation League*, 180 Cal. App. 4th at 228. It follows that the District's materially different 2013 and 2022 EDPs are also "factually distinct."

are similar to *Yates*, which held that res judicata did not preclude the second of two suits between the same parties even though the actions asserted "successive causes of action arising out of the same general subject matter—the right to [a particular source of] water" in which the plaintiffs claimed a property interest.  130 Cal. App. 2d at 540.  The same result should obtain here.  *See* 40A Cal. Jur. 3d *Judgments* § 200 (2023).

The District's res judicata argument also fails because it would violate due process to find that Plaintiffs here who were not parties in *Abatti* (i.e., all Plaintiffs except for Michael Abatti and Mike Abatti Farms, LLC) were in privity with the *Abatti* plaintiffs. The District has not shown either [1] that the *Abatti* courts employed "special procedures to protect the nonparties' interests" or [2] "an understanding by the concerned parties that the [*Abatti*] suit was brought in a representative capacity." *Taylor*, 553 U.S. at 897.  The District points to the fact that some organizations purporting to speak for Imperial Valley farmers filed amicus briefs on appeal in *Abatti*, *see* Mem. at 24–25 n.11, but "the filing of an amicus brief has never been enough to bind a non-party to the result of a proceeding," *Munoz v. Imperial Cnty.*, 667 F.2d 811, 816 (9th Cir. 1982), and at any rate, it was not even any of Plaintiffs themselves who filed the amicus briefs in *Abatti* but rather organizations claiming to represent farmers' interests.

Finally, even if this action were barred by res judicata (which it is not), the public interest exception to that doctrine would apply here.  *See People v. Barragan*, 32 Cal. 4th 236, 256 (2004) ("[P]ublic policy considerations may warrant an exception to … res judicata, at least where the issue is a question of law rather than of fact.").  Because there are many property owners in the District whose constitutional rights are affected by the 2022 EDP, "this is a matter in which the public interest requires" that this litigation "not be foreclosed." *Kopp v. Fair Pol. Pracs. Comm'n*, 11 Cal. 4th 607, 622 (1995); *see also Louis Stores*, 57 Cal. 2d at 758; *Bleeck*, 18 Cal. App. 3d at 430.

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Donald M. Falk
  Cal. Bar No. 150256
SCHAERR | JAFFE LLP
Four Embarcadero Center
Suite 1400
San Francisco, CA 94111
(415) 562-4942
dfalk@schaerr-jaffe.com

By: */s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci*
  D.C. Bar No. 452423
Brian J. Field*
  D.C. Bar No. 985577
Aaron Gordon*
  Texas Bar No. 24129117
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com
agordon@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

Dated: March 13, 2023